IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-100-BO

| | | |
|---|---|---|
| 2900 ROCK QUARRY, LLC,<br>    Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | O R D E R |
| WESTFIELD INSURANCE COMPANY,<br>    Defendant. | )<br>)<br>) | |

This matter is before the Court on defendant's motion for summary judgment under Rule

56 of the Federal Rules of Civil Procedure. [DE 19]. The matter has been fully briefed and is ripe

for adjudication. For the reasons discussed below defendant's motion for summary judgment is

granted.

BACKGROUND

This action arises from an insurance claim made by plaintiff for losses from a theft of

restaurant equipment at a property it owned in Raleigh, North Carolina. Plaintiff has alleged that

defendant breached its insurance contract, committed unfair and deceptive acts, and acted in bad

faith when it refused to pay for the stolen restaurant equipment. Defendant filed a counterclaim

for declaratory relief, alleging that an Entrustment Exclusion contained in the insurance policy

precluded coverage for the theft of the restaurant equipment.

Plaintiff acquired the property and the restaurant equipment at issue in this matter in

2011. [DE 20-1, Auton Dep. at 33:15–35:16]. Around November 18, 2013, plaintiff, through its

managing member, John Auton, entered into a lease agreement with The Balm Christian

Restaurant and Lounge, LLC (the "Balm Christian Restaurant") through its owner Harold Harris.

[DE 20-2]. Mr. Harris also executed a personal guaranty for the lease and equipment with

plaintiff. [DE 20-3]. The lease agreement allowed Mr. Harris and the Balm Christian Restaurant

to use the property and restaurant equipment owned by plaintiff. [DE 20-2 at 32 ("[a]s long as

Tenant is not in default, Tenant will have possession and sole use of all equipment for the term

of the lease."); DE 20-1, Auton Dep. at 41:6–41:14].

During all times relevant to this matter, plaintiff had a contract of insurance with

defendant for the property. That insurance contract provided coverage for, among other things,

the restaurant equipment. [DE 1-1]. The insurance contract also contained an Entrustment

Exclusion, which provided that defendant would not cover "loss or damage caused directly or

indirectly" from a "[d]ishonest or criminal act by . . . anyone to whom you entrust the property

for any purpose." *Id.* at 66.

Around January 16, 2014, the Balm Christian Restaurant defaulted under the terms of

lease and York Properties, plaintiff's property management agency, issued certified letters to the

Balm Christian Restaurant advising it of its' default under the terms of the lease. [DE 22-1,

Auton Aff. at 5]. Thereafter, sometime in January, 2014, the Balm Christian Restaurant closed

and ceased operating at the property. *Id.*

On February 6, 2014, York was contacted by the Balm Christian Restaurant's former

general manager and Harold Harris's niece, Victoria Jones. [DE 20-11 at 5–6]. Ms. Jones

confirmed that the Balm Christian Restaurant had closed and requested permission to start and

operate a new restaurant, called the Paparazzi, which plaintiff denied. [DE 22-1, Auton Aff. at

6]. Despite plaintiff's denial and without authorization or consent from plaintiff, it appears that

the Ms. Jones's new restaurant began operations on January 13, 2014. *Id.*

Around May 5, 2014, plaintiff, through counsel, sent a letter to the Balm Christian

Restaurant indicating that past rent exceeded $12,000 and plaintiff was terminating the lease

agreement and the right to possession. [DE 20-4]. Plaintiff's counsel threatened to move under the applicable law to recover possession if necessary. *Id.*

Around May 22, 2014, Mr. Auton received a call from the operator of a business near the property, who indicated that a moving van had appeared at the property. [DE 20-1, Auton Dep. at 47:16–48:4]. Mr. Auton went to the property and, looking through a window, noticed that some of the restaurant equipment had been stolen. *Id.* at 48:5–49:8.

Starting sometime in May, plaintiff began the process of obtaining a judgment of eviction for Mr. Harris and the Balm Christian Restaurant. [DE 20-1, Auton Dep. at 56:21–58:6]. The judgment of eviction was entered on June 5, 2014. *Id.* at 45:12–45:15. On June 6, 2014, Mr. Auton went to the property and learned that the remaining restaurant equipment had been stolen. *Id.* at 60:23–61:17. Mr. Auton reported the theft to the police and provided some information for an incident report dated June 6, 2014. [DE 20-6]. That incident report notes that the person arrested is "Harris, Harold Fitzgerald." *Id.* Mr. Auton prepared a list of all of the stolen restaurant equipment, which he valued at $146,932. [DE 20-8; DE 20-1, Auton Dep. at 64:6–64:11].

On June 11, 2014, less than a week after discovering the totality of the theft, counsel for plaintiff, and the same attorney who wrote the letter to the Balm Christian Restaurant terminating the lease for non-payment of rent, filed a complaint on behalf of plaintiff in the Wake County Superior Court. [DE 20-9]. The next day, June 12, 2014, plaintiff's counsel filed an amended complaint on behalf of plaintiff. [DE 20-10]. The complaints identified Harold Harris and the Balm Christian Restaurant as the "Defendants," and alleged that sometime between May 5, 2014 and June 5, 2014, "Defendants removed the [restaurant equipment] from the [property], damaging the [premises] in the process." [DE 20-9 at ¶ 10; DE 20-10 at ¶ 10]. The civil lawsuit

included a claim for conversion arising from the actions of Mr. Harris and the Balm Christian Restaurant in removing the Restaurant Equipment. [DE 20-9 at ¶ 17; DE 20-10 at ¶ 17].

On June 15, 2014, after reporting the theft to defendant, Mr. Auton provided a recorded statement to defendant. [DE 20-11]. When asked "who do you think is responsible for the loss to your property?" Mr. Auton answered "Harold Harris." *Id.* at 13.

The state of North Carolina obtained a warrant for the arrest of Harold Harris for stealing the restaurant equipment valued at $146,932.00 on June 30, 2014. [DE 20-12]. Mr. Auton testified that he assisted the police in obtaining the warrant for arrest. [DE 20-1, Auton Dep. at 76:7–76:10 and 77:23–77:25]. On January 5, 2015, a criminal indictment was handed down against Harold Harris for stealing the restaurant equipment. [DE 20-13].

Some of the stolen restaurant equipment was sold to and then recovered from Used Restaurant Equipment & Décor. [DE 20-5; DE 20-1, Auton Dep. at 51:20–51:22]. On a sales agreement produced by Used Restaurant Equipment & Décor, the seller of the equipment is listed as "Harold Harris." [DE 20-5; DE 20-1, Auton Dep. at 51:23–52:2]. It was acknowledged by plaintiff that the signature of Mr. Harris on the sales agreement is similar to the signature of Mr. Harris on the Personal Guaranty he entered into with plaintiff. [DE 20-1, Auton Dep. at 51:7–51:12].

Around April 16, 2015, ten months after the theft, plaintiff hired the Jordan Law Offices, P.A. to write a letter threatening litigation against plaintiff's insurance broker for obtaining insurance with defendant which contained the Entrustment Exclusion. [DE 20-14]. In that letter, which Mr. Auton admitted he reviewed and approved, plaintiff's lawyer wrote "[a]s you are aware, our client suffered theft of its equipment from the premises by its tenant, Harold Harris,

4

upon his vacation from the property leased to him." [DE 20-14; 20-1, Auton Dep. at 82:8–82:21].

Plaintiff filed the instant complaint against defendant on March 4, 2016. [DE 1]. Plaintiff alleges that defendant breached its contract for insurance, committed unfair and deceptive trade practices, and acted in bad faith. *Id.* In response, defendant filed an answer and counterclaim, asserting that it is entitled to declaratory relief as the Entrustment Exclusion contained within the subject policy expressly excludes coverage for plaintiff's insurance claim. [DE 8].

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative

5

or conclusory allegations, however, will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Under North Carolina law, the plaintiff bears the burden to show that the claim is covered under the insurance policy, and if he does, the burden then shifts to the defendant to show that an exclusion precludes coverage. *Builders Mut. Ins. Co. v. Mitchell*, 210 N.C.App. 657, 660 (2011). The insurance contract between the parties contained an Entrustment Exclusion which precludes coverage for "loss or damage caused directly or indirectly" from a "[d]ishonest or criminal act by . . . anyone to whom you entrust the property for any purpose." [DE 1-1 at 66]. The parties agree that the case turns on whether the Entrustment Exclusion applies to cover the thefts of the restaurant equipment, which itself turns on whether Mr. Harris was responsible for the thefts that occurred and, if so, whether he was entrusted with that equipment at the time it was stolen.

Plaintiff makes three arguments as to why summary judgement should not be granted. First, plaintiff argues that Mr. Harris only stole some of the restaurant equipment and that there is a question of fact as to whether he stole the remaining portion. Second, plaintiff argues the restaurant equipment was not entrusted to Mr. Harris, but rather to The Balm Christian Restaurant, which renders the Entrustment Exclusion inapplicable. Third, plaintiff argues the period of entrustment had ended by the time of the theft of the restaurant equipment, which renders the Entrustment Exclusion inapplicable. The Court will address each argument in turn.

The first issue in dispute is whether summary judgement can be entered on the matter of whether Mr. Harris is responsible for thefts that caused the subject loss. Defendant contends that the evidence demonstrates that Mr. Harris was responsible for the restaurant equipment thefts that occurred, citing the evidence that Mr. Harris sold some of the equipment to another store days after it was stolen; that an arrest warrant, which led to his arrest, was issued for Mr. Harris

for the thefts; that Mr. Harris was indicted in North Carolina state court for the entirety of the thefts; that a recorded interview given by Mr. Auton to defendant indicated that Mr. Harris was responsible for the thefts; and that a letter provided by plaintiff's lawyer stated that Mr. Harris was responsible for the thefts. This is substantial evidence, of which there is no disagreement as to the validity, which indicates that Mr. Harris stole all of the restaurant equipment that went missing from plaintiff's property.

Plaintiff, in its response, admits that Mr. Harris stole *some* of the restaurant equipment, which was stolen before May 22 and valued at $3,500, but denies that the evidence conclusively demonstrates that he stole all of it. While plaintiff admits that Mr. Harris stole the restaurant equipment he sold and that was later recovered from Used Restaurant Equipment, plaintiff argues that because the Balm Christian Restaurant closed in January and a new restaurant began operating on the property, and because various alarm-burglar incidents occurred at the property until May, that it is unclear who is responsible for the thefts that occurred between May 22 (when Mr. Auton inspected the property and noted some missing equipment) and June 6 (when the Balm Christian Restaurant was finally evicted). According to plaintiff, "[d]espite continued investigation, neither Plaintiff nor law enforcement has been able to confirm the entity of who stole the remaining equipment." [DE 22 at 13].

The Court is not persuaded by plaintiff's arguments, and finds that there is no reasonable disagreement as to the fact that Mr. Harris stole all of the restaurant equipment from plaintiff's property. First, the evidence summarized above is persuasive and weighty, and plaintiff has not provided any evidence that actually contradicts that proof. It is clear from the record and the contemporaneous documents and actions taken at the time of the thefts, that plaintiff and North Carolina police were in complete agreement that Mr. Harris stole all of the equipment.

The equipment plaintiff concedes was stolen by Mr. Harris and which was recovered from Used Restaurant Equipment is valued at $3,500 and consisted of only some restaurant equipment. [DE 20-5; DE 20-1, Auton Dep. at 51:20–52:7]. Plaintiff listed the value of the entirety of the stolen restaurant equipment to be $146,932. [DE 20-8]. Plaintiff assisted the Raleigh Police Department in obtaining an arrest warrant for Mr. Harris for this exact amount, $146,932. [DE 20-12; DE 20-1, Auton Dep. at 76:23–77:25]. Moreover, that arrest warrant was issued for Mr. Harris for stealing "RESTAURANT KITCHEN AND DINING EQUIPMENT AND STEREO AND SOUND EQUIPMENT." [DE 20-12]. (emphasis in original). Plaintiff agrees that Mr. Harris did not sell, and plaintiff did not recover, stereo and sound equipment from Used Restaurant Equipment. [DE 20-1, Auton Dep. at 76:23–77:25]. This indicates that both plaintiff and the Raleigh police believed that Mr. Harris was responsible for all of the thefts, which included both restaurant and sound equipment and was valued at $146,932, and not just some of it. Additionally, Mr. Harris was indicted for the theft of "restaurant kitchen and dining equipment and stereo sound equipment" having a value of $146,070. [DE 20-13]. This, along with the arrest warrant, contradicts plaintiff's assertion that law enforcement has been unable to determine who stole the restaurant equipment.

Additionally, plaintiff's own previous statements belie its assertions made now in response to defendant's summary judgment motion. On June 6, 2014, upon the eviction of the Balm Christian Restaurant, the Raleigh Police Department was contacted and told by plaintiff that "COMP'S TENANTS MOVED OUT AND TOOK ALL OF THE COMP'S EQUIPMENT." [DE 22-2 at 43] (emphasis in original). One year later, plaintiff wrote a letter stating that the insurance broker who sold defendant's insurance policy insurance to plaintiff committed negligence and should be liable for plaintiff's damages, which was described as being caused by

8

"theft of its equipment from the premises by its tenant, Harold Harris, upon his vacation from the property leased to him." [DE 20-14; DE 20-1, Auton Dep. at 82:8–82:21]. These statements, made by plaintiff and plaintiff's attorneys, indicate that plaintiff believed Mr. Harris had stolen all of the equipment, not unknown persons or another squatter at the property.

Finally, the Court finds that plaintiff is estopped from asserting that Mr. Harris did not commit these thefts. Judicial or equitable estoppel "precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996) (citation omitted); *see also State v. Taylor*, 496 S.E.2d 811, 815, *aff'd*, 504 S.E.2d 785 (1998). Here, plaintiff filed a civil lawsuit in Wake County Superior Court on June 11, 2014, in which it alleged that Mr. Harris and the Balm Christian Restaurant stole all of the restaurant equipment. [DE 20-9; DE 20-10]. Specifically, that lawsuit alleged that Mr. Harris "removed [all goods, wares, equipment, fixtures, furniture, improvements and other personal property ("the Secured Property")] from the Leasehold Premises", [DE 20-10 at ¶¶ 9–10], and that the value of that property was "in excess of $25,000.00." *Id.* at ¶ 15. That lawsuit clearly takes the position that Mr. Harris is solely responsible for the entire amount of these thefts, and it is a position and representation taken by plaintiff in a prior judicial proceeding.

Plaintiff tries to dispute that it is estopped from arguing differently by asserting that the lawsuit was filed by plaintiff's attorney, not plaintiff, and without plaintiff's knowledge. Aside from a statement given by Mr. Auton, there is no evidence supporting this argument, and the contention does not stand up to scrutiny. The lawsuit was filed in plaintiff's name and on behalf of plaintiff. The fact that the complaint was signed and addressed by an attorney and not plaintiff

9

is not of any consequence, because that is how complaints are typically filed in courts across the nation. If an entity is represented, lawsuits will be filed, signed, and addressed by the attorney representing the entity and not the entity itself. In fact, that is how plaintiff's complaint in the instant matter was filed and signed: by the plaintiff's current attorney and not by plaintiff itself. [DE 1 at 12]. Moreover, the complaint in the Wake County civil lawsuit clearly notes that it was filed on plaintiff's behalf and with its knowledge, by stating: "Plaintiff 2900 Rock Quarry, LLC ("Plaintiff"), by and through the undersigned counsel . . ." [DE 20-10 at 2]. If this was a misrepresentation by that attorney, and that attorney in fact acted improperly in filing that complaint without plaintiff's permission, then this Court would expect that plaintiff would have remedied this wrong with a legal malpractice action or ethical complaint against that lawyer. But it appears that neither remedy was pursued by plaintiff. Rather, this attorney appears to have been trusted by plaintiff and utilized for many legal actions at the time at which these thefts occurred. In fact, the same attorney plaintiff claims acted in a rogue manner by filing the Wake County civil lawsuit is the same lawyer plaintiff trusted to send letters notifying the Balm Christian Restaurant of its default. Additionally, and as defendant argues, one of the purposes of the doctrine of estoppel is to protect the integrity of the judicial process. *See Lowery*, 92 F.3d at 223. The Court agrees with defendant that the integrity of the judicial process is not protected if a lawsuit can be filed and its consequences avoided based on unsupported claims it was effectuated by a rogue attorney. For these reasons, the Court finds that plaintiff is estopped from arguing that Mr. Harris did not commit the thefts involved in this matter.

There is no reasonable dispute as to who stole the equipment at issue, and plaintiff's arguments disputing the weighty evidence discussed above is no more than unsupported speculation, and not enough to defeat summary judgment. *See Buchat v. Balt. Ravens Football*

*Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003). The Court finds that reasonable minds would not differ as to the import or meaning of the evidence discussed above. Furthermore, plaintiff is estopped from arguing otherwise. *See Lowery*, 92 F.3d at 223. Therefore, the Court finds, there being no genuine issue of material fact as to this issue, that Mr. Harris was responsible for the entirety of the restaurant equipment theft.

Having found that Mr. Harris is responsible for the thefts, the Court next turns to the question of whether the restaurant equipment was entrusted, as a matter of law, to Mr. Harris. As to this question, plaintiff first argues that the Entrustment Exclusion should not apply because the equipment was not entrusted to Mr. Harris, but rather to The Balm Christian Restaurant, a limited liability company. This argument is without merit. The sole member of the Balm Christian Restaurant is Mr. Harris. [DE 23-2]. The lease, in which the restaurant equipment was entrusted, was signed by Mr. Harris on behalf of the Balm Christian Restaurant as the "Owner." [DE 20-2]. Mr. Harris personally guaranteed the performance of the Balm Christian Restaurant, [DE 20-3], and plaintiff was aware that Mr. Harris was the Balm Christian Restaurant and would be the one using the premises and the restaurant equipment. [DE 20-11 at 5]. There is no meaningful difference in this case between Mr. Harris and the Balm Christian Restaurant. Moreover, there appears to be no legal distinction either, as plaintiff has cited no cases in which a court has held that an entrustment exclusion does not apply when property is entrusted to an entity but stolen by individuals associated with that entity. Rather, the cases suggest the opposite: that entrustment exclusions do apply in such situations. *See, e.g., Plaza 61 v. N. River Ins. Co.*, 446 F. Supp. 1168 (M.D. Pa. 1978), *aff'd*, 588 F.2d 822 (3d Cir. 1978); *F.D. Stella Prod. Co. v. Gen. Star Indem. Co.*, No. 03-C-5151, 2005 WL 3436388 (N.D. Ill. Dec. 12, 2005).

Plaintiff also argues that the restaurant equipment was no longer in Mr. Harris or the Balm Christian Restaurant's possession at the time it was stolen and that the period of entrustment had ended before the thefts occurred. When encountering entrustment exclusions with language similar to that in this instant matter, the courts have been uniform in holding that they apply to bar recovery from thefts committed by the person entrusted, even when the dishonest or criminal acts occur after the period of entrustment has terminated, provided that there is some sort of nexus or causal connection between the entrustment and the later theft. *See, e.g., F.D. Stella Pros. Co.*, 2005 WL 3436388, at \*7 ("The 'entrustment exclusion,' however, applies even if the dishonest or criminal act occurs after the entrustment has terminated."); *Plaza 61*, 446 F.Supp. 1168 (rejecting the plaintiff's argument that when it terminated a contract with a contractor the entrustment exclusion should not bar recovery for later thefts committed by that contractor); *Easy Corner, Inc. v. State Nat'l Ins. Co.*, 56 F.Supp.3d 699, 707 (E.D. Pa. 2014) ("[G]iven the purpose of entrustment exclusions, they apply even after the temporal termination of an entrustment, provided there is a causal connection between the act of entrustment and the resulting loss."); *Bainbridge, Inc. v. Calfarm Ins. Co.*, No. D042362, 2004 WL 2650892, at \*6 (Cal. Ct. App. Nov. 22, 2004) (unpublished) (noting that "[n]othing in the language of the entrustment exclusion requires that the wrongful act and the entrustment of the property be contemporaneous," and holding "this language to require nothing more than a causal connection between the act of entrustment and the resulting loss, even if the loss occurs after the entrustment has terminated."). Underlying these holdings is the principle that an insurer can only be responsible for that which it has agreed to insure, and that the agreed upon purpose of entrustment exclusions is to exclude coverage for "misplaced confidence" by an insured. *See Van Sumner, Inc. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 329 S.E.2d 701, 704 (1985). Plaintiff

cannot escape these holdings and principles by arguing that it had ceased trusting its tenant Mr. Harris once the thefts occurred, because it is axiomatic that one will lose trust in one formerly entrusted once that person commits dishonest or criminal acts in violation of that trust. Entrustment Exclusions would be rendered meaningless if one could escape their effect simply by arguing that one lost trust in the thief before he committed thefts against your property. The point is to exclude coverage for misplaced trust, and such exclusions are bargained for and agreed to by both parties before the period of insurance begins. Therefore, plaintiff's argument that the period of entrustment categorically ended before the thefts when it notified Mr. Harris and the Balm Christian Restaurant of its default is unavailing.

Additionally, the parties both agree that the thefts occurred prior to plaintiff obtaining a judgment of eviction against the Balm Christian Restaurant and Mr. Harris, and there is therefore no dispute that Mr. Harris and the Balm Christian Restaurant had the right to occupy the premises and use the restaurant equipment until that time. [DE 20-1, Auton Dep. at 60:7–60:22]. Mr. Harris and the Balm Christian Restaurant had the legal right to possession of the restaurant equipment past the date of the thefts. Thus, there is no reasonable dispute as to fact or law that the entrustment of the restaurant equipment to Mr. Harris had not ended by the time of the theft.

Therefore, the Court finds that the Entrustment Exclusion in the parties' insurance policy bars plaintiff's recovery, because plaintiff entrusted the property to Mr. Harris and Mr. Harris's dishonest or criminal act caused the loss. There is no genuine dispute of material fact, and the evidence in this matter demonstrates that summary judgment in defendant's favor is merited for all of plaintiff's claims. Therefore, defendant's motion for summary judgment will be granted and this matter will be closed.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [DE 19] is

GRANTED. The Clerk is DIRECTED to close the case.

SO ORDERED, this **14** day of June, 2017.

*Terrence W. Boyle*

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE